# Richmond.

## COX v. CARR & ALS.

### April 3, 1884.

1. APPEALS—*Jurisdiction — Test.*—Where jurisdiction depends on the amount in controversy, if plaintiff in his declaration or bill claims money or property of greater value than $500, he is entitled to his appeal or writ of error, though the judgment be for less. But not so the defendant, if the judgment be for less. *Gage* v. *Crockett,* 27 Gratt. 735.

2. IDEM—*Idem—Colorable claim.*—Yet if the claim is merely colorable in order to give the court jurisdiction, and *that was made to appear,* jurisdiction would be declined; for jurisdiction can no more be conferred than it can be taken away by improper devices of parties. *Hansbrough and Wife* v. *Stinnett.* · 22 Gratt. 593.

3. IDEM—*Idem—Case at bar.*—Sum claimed in bill with interest at date of final decree, excluding costs, exceeds $500, and nothing appears to show that the sum claimed was fixed with the view of acquiring jurisdiction in this court—

HELD:

This court has jurisdiction of the appeal.

4. SALES UNDER TRUST DEEDS—*Conveyance—Payment—Case at bar.*— P. conveyed to N. lot in L. in 1857 to secure debt of E., and in 1858 to secure debt of C. B. had prior judgments docketed against P. In 1860, N. sold lot to D., and conveyed it by deed duly recorded, and reciting that purchase money was paid. Later, D. conveyed it to G., who conveyed to A. In 1879, C. filed bill alleging that D. paid part of purchase money to satisfy E.'s debt, but that the balance and his debt were unpaid, and seeking to subject lot to satisfy same. On demurrer, bill was dismissed as to G. and A. D. answered that he had paid the whole purchase money, and relied on the recital. It appeared that D., on dispute arising between B. and C. as to that balance, had, with their consent, placed it, or his note therefor, in F.'s hands to await end of dispute ; that between 1860 and 1879, in suit to subject after-acquired lands of P., B.'s judgments had been satisfied, and that C. had reduced his debt to

judgment, but made no effort to have it satisfied in said suit, though younger judgments were therein satisfied. F. remembered nothing, and from lapse of time, &c., no light was shed on the subject by the master's report. On final hearing, bill was dismissed. On appeal—

HELD:

C. failed to establish his case. Under the circumstances, it was reason-
· ably presumable that the entire purchase money had been paid; and the bill was properly dismissed.

Appeal from decrees of circuit court of Loudoun county, entered May 6th, and October 25th, 1880, respectively, in the cause of John E. Cox, complainant, *v.* David Carr, Joel L. Nixon, trustee, Thomas W. Edwards, Godfrey Shelburne, and Albert Shiner, defendants. The first decree dismissed the bill as to defendants, Shelburne and Shiner. The second dismissed it as to all the defendants. From these decrees said Cox obtained an appeal to this court. The appeal was heard in November, 1883, and dismissed, because it was adjudged that the amount in controversy fell short of the minimum sum of $500 exclusive of costs. It comes again to be heard, a rehearing having been allowed the appellant. Opinion states the case.

*John M. Orr*, for the appellant.

*Edward Nichols*, for the appellees.

RICHARDSON, J., delivered the opinion of the court:

On the 9th day of January, 1857, John T. Perry conveyed to J. L. Nixon, trustee, a house and lot in the town of Leesburg, Loudoun county, Va., to secure to Thomas W. Edwards the purchase money thereof, the same having been sold and conveyed by said Edwards to said Perry. At the time of executing the above named trust deed, said Perry was debtor by two judgments for a considerable amount, one in the name of George H. Bayne and the other in the name of George H. Bayne's administrator, on which judgments executions had issued and gone

into the hands of the sheriff. These judgments were docketed and attached as liens upon said house and lot, but in subordination to said trust for the benefit of said Edwards.

On the 20th day of January, 1858, said John T. Perry executed to said J. L. Nixon, trustee, another deed, conveying said house and lot in trust to secure John E. Cox (the appellant) the sum of $304.19, with interest from date. On the 8th day of December, 1860, said trustee, J. L. Nixon, sold said house and lot, and the appellee, David Carr, became the purchaser at the price of $706. This sale was made by the trustee, at the instance of both Edwards and Cox, the beneficiaries in said two trust deeds respectively. As soon as the sale was made, which was for cash, the purchaser, Carr, proceeded to pay to the trustee or parties entitled thereto, under his direction, the purchase money, and did pay to said Edwards the balance then due him and secured by said first named trust deed. Some other amounts are claimed to have been paid by the trustee as prior and superior to the trust lien in favor of Cox; but as to what they were and to whom paid, there is, after such great lapse of time and complete absence of any written memoranda, much confusion and doubt. The balance, whatever it was, was about to be, and would have been, paid to Cox on the debt due him and secured by said second trust deed, but a dispute arose as to whether it should not be paid on said Bayne debts, in preference to said trust deed to Cox, the Bayne judgments being prior thereto. Mr. John M. Orr, now counsel for the appellant, Cox, was then present as counsel representing said Bayne judgments, executions on which were then in the hands of the sheriff of Loudoun county, and demanding that said balance be paid on the said debts represented by him. Mr. C. B. Tebbs, as counsel for said Cox, was also present, and demanding said balance on the debt secured by said second trust deed to his client.

Here, and by reason of these conflicting claims, arises some confusion and uncertainty as to how the question as to said balance was then disposed of; whether it was then, or very soon

thereafter, paid by Carr, the purchaser, to the trustee, or whether, by the agreement of Tebbs, counsel for Cox, and Carr, the purchaser, and Nixon, the trustee, Carr executed his note therefor to said trustee, and the same, by like agreement, was turned over or assigned to Geo. K. Fox, Jr., to be by him held, or the money thereon to be by him collected and held subject to the determination of the question of right between said contesting parties, to the exoneration of said trustee from all further trouble or liability on account thereof. However this may have been, on that day (December 8th, 1860) J. L. Nixon, trustee, conveyed by proper deed to the purchaser, David Carr, all the interest in and to said house and lot vested in him by said two trust deeds, both of which are particularly referred to, and the receipt from said Carr of the full amount of the purchase money acknowledged on the face of said deed then made by said trustee.

A portion of the Bayne debts against John F. Perry was satisfied by a levy and sale in 1860, or 1861, by the sheriff of Loudoun, of the personal property of said Perry. The net amount thus realized was $45. The war came, and after its close—Perry, in the meantime having acquired other real estate, and the residue of the Bayne debt remaining unpaid—a chancery suit was instituted in the circuit court of Loudoun, by the style of *Ish* v. *Perry*, the object of which was, as it seems, to enforce other claims against the newly acquired real estate of said Perry. In that suit the Bayne liens were satisfied. In the meantime Cox, notwithstanding his said trust deed to secure the debt due from Perry to him, had, prior to the war, put his debt also into judgment against said Perry, but in the suit of *Ish* v. *Perry*, no effort seems to have been made by Cox to enforce his debt, then in the form of a judgment, against the real estate of said Perry, when the fair inference is, that his judgment being prior to the war, must have been older and a superior lien to other claims that were enforced in that suit. Of this, however, there can be no certainty, as but very meagre reference is made in the record of this case to what occurred in said suit of *Ish* v. *Perry*.

After the conveyance to David Carr by Nixon, trustee, Carr conveyed the same property to Godfrey Shelburne, and the latter afterwards conveyed same to Albert Shiner, who held the same at the commencement of this suit.

At the November rules, 1879, John E. Cox, the appellant here, filed his bill in the circuit court of Loudoun against David Carr, J. L. Nixon, trustee, Thomas W. Edwards, Godfrey Shelburne and Albert Shiner, setting out the execution of the said trust deeds, the sale made by the trustee, Nixon, thereunder, and the purchase of the house and lot by David Carr, and the conveyance of same to him by said trustee, and the subsequent conveyances by Carr to Shelburne, and by Shelburne to Shiner, and charging that after paying off the balance due on the prior lien in favor of Edwards, and all other proper disbursements by said trustee, Nixon, there was a balance remaining of not less than $280.43, as of the date of said trustee's sale, properly applicable to his debt, no part of which it is alleged has ever been paid. That said Carr purchased said house and lot, and took the trustee's conveyance for same before paying the purchase money, with full knowledge of his lien by virtue of the trust deed of January 20th, 1858, and that said Carr is liable for said balance remaining unpaid, and that the same is a subsisting lien upon said property so conveyed, and asks that the same be subjected thereto.

On the 6th day of May, 1880, the cause having been matured, came on for hearing on the bill taken for confessed, and exhibits filed, and the demurrer to the bill by the defendant, David Carr, when a decree was entered among other things dismissing the bill on said demurrer as to the defendants, Godfrey Shelburne and Albert Shiner, directing the settlement of the account of said J. L. Nixon as trustee, and giving leave to the said defendants to file their answers before the commissioner within sixty days from the rising of the court. None of the defendants answered except David Carr. In his answer he says: "Respondent denies that at the time of said sale a large part of the

debt secured on said property to Edwards had been paid; but on the contrary says the greater part thereof was then due and unpaid, and respondent believes that from lapse of time, loss of papers, &c., it will now be impossible to state accurately what was its then condition.

"Respondent denies that there remained the sum of $280.43 of the proceeds of said sale, applicable to complainant's debt, secured on the aforesaid property, but on the contrary says there were certain taxes and other liens binding said property then prior and superior to complainant's lien by deed of trust thereon, more than sufficient in amount to absorb the entire proceeds of said sale, and complainant was not then and is not now entitled to one dollar thereof. It may be that complainant's demand has not been paid to him, and respondent denies that he is now or ever was bound to pay it or any part thereof to complainant.

"Respondent denies that of the proceeds of said sale there was then the sum of $280.43, or any part thereof, applicable to complainant's claim stated in the bill. Respondent admits that he bought said property on December 8th, 1860, for $706, but expressly denies that he received and accepted said conveyance of the same from said trustee, without or before paying the purchase money therefor in full ; but, on the contrary, respondent says that having bought said property he was prepared to pay for it, and respondent did, on December the 18th, 1860, pay the entire purchase price therefor—to-wit: the sum of $706—to said trustee, who on said day executed and delivered a deed to said respondent, conveying said house and lot to him, in express terms acknowledging the receipt of the entire purchase money by said trustee, who, respondent insists, was in the entire transaction the agent of both the debtor and creditors, secured by the deeds under which he acted; said deed was at once duly recorded, and respondent's liability for said purchase money was then ended, and has so remained for twenty years. * * * * * * Respondent further says, that after said sale said Bayne's administrator, through his said attorney, John M. Orr, set up a claim

to the funds then in said trustee's hands, which was less than $200, after paying off the Edwards' debt for purchase money. Said Cox, through his said attorney, Charles B. Tebbs, also claimed it, and as said attorneys could not agree as to who was entitled to it, and desiring to relieve said trustee of it, they, said Orr and Tebbs, attorneys as aforesaid for their respective clients and in their behalf, agreed with said trustee that he (said trustee) should place the fund in his hands in the hands of George K. Fox, then clerk of the county court, to await the decision who was entitled to it; some question arose about it soon after the late war, and said Fox admitted he had been connected with it, and did not deny the receipt of said fund."

The commissioner to whom was referred the settlement of the trust accounts reported three statements as to the balance in question, each and all conjectural and indefinite. He says: "As to whether this money was ever legally paid, if paid at all, I cannot determine. If it was paid, then the first statement is correct, except that the amount stated to have been paid to Gibson ($35 or $40), in the absence of any receipt, and taking Gibson's statement, should be added to the balance said to have been paid in cash, though afterwards paid by Carr to properly authorized receiver. If Carr had not paid the money, then the second statement is probably correct. In any event, the court must decide." Nothing could well be more unreliable than such a report as the basis of a decree. It is a frank admission by the commissioner that he had been able to discover nothing as an intelligent guide for the action of the court.

This report was excepted to, and at the same term of the court (October, 1880,) at which said exceptions were filed, by leave of the court, said defendant, Carr, filed his plea of the statute of limitations, and at the same term of the court the cause came on for hearing, when the court entered a decree that there was no liability on the defendants in favor of the complainant, and dismissed the bill. From so much of the decree of May, 1880, as dismissed the plaintiff's bill as to the defendants, Shelburne and

Shiner, and from said final decree of October, 1880, the case is here on appeal.

This case was heard and determined by this court, at this place, at the November term last, when it went off on the ground of want of jurisdiction, the amount in controversy being then considered to be less than $500, exclusive of costs, at the date of the decree complained of. And a rehearing having been granted, the question of jurisdiction is first to be passed on.

The well established rule of this court is, that it has jurisdiction in civil cases, with certain exceptions not necessary to be mentioned, where the matter in controversy, exclusive of costs, exceeds in value or amount five hundred dollars, at the date of the judgment or decree complained of. This is ascertained by excluding only the costs. The usual test is, where the plaintiff sues for money, the amount claimed in his declaration or bill. *Gage* v. *Crockett*, 27 Gratt. 735. By this it must not be understood that the plaintiff by any reckless unfounded claim could acquire jurisdiction in this court, especially, if looking to the whole record, the court can see that the amount claimed is with a view of improperly acquiring jurisdiction in this court. In *Fink* v. *Denny*, 75 Va. 667, it is said: "If the claim is merely colorable in order to give the court jurisdiction, and that was made to appear, jurisdiction would be declined, for jurisdiction can no more be conferred than it can be taken away by improper devices of parties." See also *Hansbrough and Wife* v. *Stinnett*, 22 Gratt. 593.

Looking to the whole record and the surroundings of this case, it is a matter for serious consideration whether this court should take jurisdiction of the cause. It is very difficult to determine that this court should, under all the circumstances disclosed, take jurisdiction. But, inasmuch as the sum claimed in the plaintiff's bill with interest, and not including costs, at the date of the final decree complained of, exceeded five hundred dollars in amount, and there is nothing to indicate that the sum

claimed was fixed with the express view of getting jurisdiction in this court, we think the claim as made in the bill should furnish the criterion. We are, therefore, of opinion that this court has jurisdiction. On the merits we are, unhesitatingly, of opinion that the decree of October, 1880, dismissing the plaintiff's bill is, in any view that may be taken, altogether proper. It would seem to be impossible, upon a calm view of the case as disclosed by the record, to come to any other conclusion than that the plaintiff utterly failed to make a case entitling him to consideration at the hands of a court of conscience.

The material charge in the bill is, that with full notice of plaintiff's (Cox) lien, the defendant (Carr) became the purchaser of the house and lot, and took the trustee's conveyance therefor before paying the balance of purchase money now in question, and that said lien is still a charge upon said property. Carr's answer is directly responsive and an emphatic denial of the charge; and, moreover, he says he paid every dollar of the purchase money at the time he took the deed from the trustee (Nixon), and he exhibits in proof of the fact the deed itself, on the face of which said trustee acknowledges the receipt of the entire purchase money. In his answer he, moreover, explains in careful and consistent detail the circumstances under which the money was paid. These have already been given above in a quotation from Carr's answer. Suffice it now to say, there was a conflict of claims as to who should get the balance after paying off the prior lien to Edwards. John M. Orr, then as counsel representing the Bayne judgments and execution liens, was present, claiming said balance as applicable to those debts which were prior to the Cox trust lien, represented by Mr. Tebbs, who was present also, and claiming the fund for his client. Carr, who is conceded on all hands to be a correct, careful business man, wanted to be safe. Hence, for his accommodation and protection it was agreed between the contending counsel that the trustee should pay the balance in hand, or put it in the hands of

George K. Fox, then clerk of the county court of Loudoun, to await the decision of the question in dispute between these two creditors. This was complete protection to Carr—as complete as if he had rightfully paid the money to Cox and held his receipt—for whether Mr. Orr or not, as counsel for Bayne, acceded to this arrangement, is not material, as Cox, the claimant here, certainly was a party by his counsel, Tebbs, assenting to that arrangement, and is effectually estopped from asserting any claim by reason of what occurred against said Carr. This is the only reliable view that can be taken consistently with the facts disclosed by the record. This accounts why Carr has no receipt for the money. He needs none other than his deed.

It is obvious that Nixon, the trustee, and Fox, who by said arrangement was made custodian of the fund, have no definite recollection of what did transpire. Not a single paper is produced, except the deed from the trustee to Carr, to throw any light upon the transaction. After the long period which has elapsed, in the absence of any other written evidence of what transpired, and especially in consideration of the obliterating effect of the period of war on business transactions, the deed ought to be conclusive when, as here, borne out substantially by all the evidence in the cause and circumstances connected with the transaction.

Nixon, the trustee, in his deposition says, as to the agreement at the time of the sale by him as trustee, substantially what Carr says in his answer, the only difference being that he says that the agreement was that instead of Carr paying over the money as he wanted to, he (Nixon) should make the deed to Carr, and he (Carr) should give his note to Nixon for the balance in dispute, which note should be turned over to Fox, and that it was accordingly so arranged. And Nixon further says, that he had no doubt the money had been paid by Carr, for he, after the transaction, heard Carr say to Fox he had paid the money, and that Fox said he had no doubt of it, or he would have the note.

It is obviously immaterial as between Cox and Carr whether the arrangement was made by Carr giving his note for the balance, or by paying the money as he says, for in either case, whether money or note, the balance went into the hands of Fox as receiver; and Nixon says that by the arrangement he and Carr were to have no more trouble about it.

Again, in his deposition, Nixon, when questioned as to the amount of the Edwards' debt at the date of the trust sale, says: "I never did know it; all I was after was the balance due. I put the amount on a piece of paper, and only knew it then; it was under the supervision of C. B. Tebbs, attorney for Cox, and I told him to come to the clerk and get the money due to him on the Cox deed of trust. I thought he was competent to settle the business. He came, and he and Mr. Edwards and Mr. Carr settled the matter between them; Mr. Carr paying the amount due to Edwards, &c."

This is strongly corroborative of the substance of Carr's statement in his answer. And in this respect, Mr. Orr, whose deposition is in the cause, corroborates what is said as to who actively participated, he, Orr, saying that he had nothing to do with the manner in which the balance was disposed of; that he was present only to notify the trustee of the Bayne liens represented by him, and to claim the balance thereon; and that he remembers very little else of what then transpired. It is true, Mr. Orr, in his statement in an argumentative way, disagrees materially with Nixon, but his statement, so far as admissible, substantially supports Carr's statement. The charge in the bill is, not that Carr has never paid said balance, but that he did not pay it before taking the conveyance. It has been seen that it is immaterial whether the balance was paid in cash at the time or a note given therefor, and afterwards paid to the agreed receiver, Fox, as in either event the arrangement was by the express agreement and under the supervision of Cox, by his attorney, Tebbs. In no just sense has Cox any claim against

Carr. For these reasons we are of opinion there is no error in the decrees complained of, and the same must be affirmed.

*Lacy*, J., concurred in affirming the decree on its merits, but thought, upon a correct calculation of the amount in controversy, it fell below the *minimum* jurisdictional sum, and that therefore the appeal should be dismissed.

DECREE AFFIRMED.